RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE  1/20  /09
BY  Bm

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| CLARENDON AMERICA INSURANCE CO. | CIVIL ACTION NO. 07-2037 |
| VERSUS | JUDGE DONALD E. WALTER |
| CM GENERAL CONTRACTORS, INC., ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Default Judgment [Record Document 29] filed on behalf of plaintiff, Clarendon America Insurance Co. ("Clarendon"), pursuant to Federal Rule of Civil Procedure 55, wherein Clarendon asks that a default judgment be entered against defendant, CM General Contractors, Inc. ("CM General") and James L. Cartier ("Cartier"). Clarendon also requests that this court enter a judgment declaring that no defense, indemnity, or coverage is owed by Clarendon to CM General and Cartier under Clarendon policy no. DSA014327 for the claims, losses, and damages alleged in the lawsuit filed by Gayle and Joseph Fertitta in the Civil District Court for the Parish of Orleans, State of Louisiana. Neither CM General nor Cartier has responded to Clarendon's motion. For the reasons assigned herein, plaintiff's motion is **GRANTED**.

### I. FACTUAL BACKGROUND

In 2006, Gayle G. Fertitta and Joseph D. Fertitta ("Fertittas") filed suit against James L. Cartier[1], CM General, and The Gray Casualty & Surety Company[2] in the Civil District Court for the

---

[1] James L. Cartier is the officer and owner of CM General Contractors, Inc. For purposes of this motion, it is assumed that Cartier qualifies as an insured under the "Who is an Insured"

Page 1

Parish of Orleans, State of Louisiana. The Fertittas allege CM General breached a construction contract with them for a project known as the "1039 Warehouse Apartments" project. They claim CM General failed to complete the construction work on or before August 15, 2005, abandoned the project without justification or legal cause, and improperly performed the work. See Rec. Doc. 29, Ex. 1, ¶ 21. Further, the Fertittas contend that CM General's breach exacerbated the damage caused by Hurricane Katrina.

Plaintiff, Clarendon, issued a commercial general liability policy, number DSA014327 ("Clarendon policy") to CM General, with a policy period from April 3, 2005 to April 3, 2006. The Clarendon policy states that Clarendon "will pay those sums that the insured becomes legally obligated to pay as damages because of...'property damage' to which this insurance applies." [Rec. Doc. 29, Ex. B]. However, the insurance applies only to "property damages" caused by an "occurrence" and contains various exclusions from coverage. See Id.

On November 21, 2007, Clarendon filed suit in the Western District of Louisiana against CM General, Cartier, and the Fertittas seeking a declaratory judgment that the damages claimed by the Fertittas are not covered by the Clarendon policy and, therefore, Clarendon does not owe a duty to defend or indemnify CM General and/or Cartier in the underlying state court action. [Rec. Doc. 1]. On December 26, 2007, a "Waiver of Service" was returned executed by both Gayle and Joseph Fertitta. On January 29, 2008, the Clerk of Court issued Summonses for CM General and Cartier, and service was executed on February 13, 2008. [Rec. Doc. 4–7]. However, both CM General and

---

portion of the Clarendon policy.

[2]Clarendon contends that the underlying suit implicates coverage under CM General's performance bond, issued by Gray Casualty & Surety Company.

Cartier have failed to file an answer or otherwise appear in this case. On July 28, 2008 and again on December 5, 2008, the Clerk of Court issued a "Notice of Entry of Default" against CM General and James L. Cartier.[3] [Rec. Doc. 17, 25, 26]. Clarendon has moved for an Entry of Default Judgment and also requests that this court declare that Clarendon owes no defense, indemnity or coverage to CM General for the claims, losses and damages alleged in the underlying suit.

## II. LAW AND ANALYSIS

### A. DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55, a party may be subject to a default judgment if he fails to plead or otherwise respond to a complaint within the required time period. A defendant, through his default, admits the factual allegations of the complaint, except those relating to the amount of damages. See Jackson v. FIE Corp., 302 F.3d 515, 525 n. 29 (5th Cir. 2002), reh'g denied (internal citations omitted). As a general rule, entry of a default judgment is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded. See Id. Consequently, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and should be resorted to only in extreme situations." Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n, 874 F.2d 272, 276 (5th Cir. 1989).

A plaintiff "is not entitled to entry of default judgment as a matter of right, even where the defendant is technically in default." Ganther v. Ingle, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is left to the sound discretion of the court. Lindsey v. Prive Corp., 161 F.3d 886,

---

[3]Clarendon filed a motion for a second "Notice of Entry of Default" out of an abundance of caution related to the court's order lifting a stay in Cartier's Ch. 13 Bankruptcy proceeding. [Rec. Doc. 23].

893 (5th Cir. 1998). In determining whether entry of default judgment is warranted in a particular matter, the Court may consider "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion." Id.

After reviewing the record, this Court finds that CM General and Cartier are clearly in default. As stated above, Clarendon properly effected service of process on CM General and Cartier on February 13, 2008. Proof of this service was filed with the Court on March 17, 2008. A "Notice of Entry of Default" was entered by the Clerk of Court on July 28, 2008. In an abundance of caution related to Cartier's Ch. 13 Bankruptcy proceedings, Clarendon sought a second "Notice of Entry of Default." Despite the ample time CM General and James Cartier have been given to file answers or otherwise respond to the complaint, they simply have failed to do so. Further, there is no evidence before this Court that CM General & Cartier's defaults are the result of "a good faith mistake or excusable neglect." See Lindsey, 161 F.3d at 893.

Accordingly, all procedural requirements for entering default judgment against CM General and James L. Cartier have been satisfied, and default judgment is warranted in this matter. The Court will now determine whether it is appropriate for the Court to exercise its jurisdiction and issue declaratory relief.

### B. DECLARATORY JUDGMENT

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), provides that, subject to certain exceptions:

> In a case of actual controversy within its jurisdiction,... any court of the United

States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The purpose of the DJA "is to resolve outstanding controversies without forcing a putative defendant to wait to see if [he] will be subjected to suit." Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 398 n.8 (5th Cir. 2003). It is intended to "afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action." Marinechance Shipping, LTD. v. Sebastion, 143 F.3d 216, 219 n.11 (5th Cir, 1998) (relying on Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil, 3d § 2751 (1998)).

District courts have broad, but not unfettered, discretion in deciding whether to decide or dismiss an action for declaratory judgment. Dow Agrosciences, L.L.C. v. Bates, 332 F.3d 323, 327 (5th Cir. 2007). In analyzing whether to entertain the suit, a district court must follow the three steps set out by the Fifth Circuit in Orix Credit Alliance, Inc. v. Wolfe, 212 F.3d 891, 895 (5th Cir. 2000). The court must determine (1) whether the declaratory action is justiciable, (2) whether the court has authority to grant declaratory relief, and (3) whether to exercise its discretion to decide or dismiss the case. Id.

### 1. Is Clarendon's Suit Justiciable?

"A declaratory judgment action is ripe for adjudication when an 'actual controversy' exists between the parties to the action." Id. at 896. The "case or controversy" requirement of Article III of the United States Constitution is identical to the actual controversy requirement under the DJA. See Texas v. West Publ'g Co., 882 F.2d 171, 175 (5th Cir. 1998). Whether the facts are "sufficiently

immediate" to establish an actual controversy is a question that must be analyzed on a case-by-case basis. Orix, 212 F.3d at 896.

By reason of their default, CM General and James Cartier (hereinafter, collectively referred to as "CM General") have admitted all of Clarendon's allegations in the Complaint are true. The factual allegations establish that CM General believes that Clarendon owes a duty to defend and indemnify CM General for any damages owed to the Fertittas in the underlying action. However, Clarendon contends that the Clarendon policy does not provide coverage for any of the losses or claims alleged by the Fertittas. Based on these allegations, it is apparent that there is an "actual controversy" between the parties that is neither hypothetical nor conjectural. A declaratory judgment in this case would not serve merely as an advisory opinion; rather, it would adjudicate the rights and obligations of Clarendon to defend and indemnify CM General with respect to the Fertittas' claims.

### 2. Does the Court have Authority to Grant Declaratory Relief?

"[A] district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case is involved in the same issues as those in the federal court, and (3) the district court is prohibited from enjoining the state proceedings under [the Anti-Injunction Act[4]]." Sherwin-Williams, 343 F.3d at 388, n.1 (internal citations omitted). In other words, under the second step the court must determine whether competing state and federal proceedings exist, and whether the

---

[4]The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. If an injunction would be barred by the Anti-Injunction Act, the issuance of a declaratory judgment that would have the same effect should also be barred. See American Airlines, Inc. v. Dept. of Transportation, 202 F.3d 788, 802 (5th Cir. 2000).

district court is prohibited from intruding in the state action by the Anti-Injunction Act.

Although there is a pending state court action concerning CM General's liability for the alleged breach of contract concerning the 1039 Warehouse Apartment contract, Clarendon is not a party to that action. The state action does not involve the same issues as those before this court because the state court does not have to determine whether the Fertittas' claims are covered by the Clarendon policy, nor is the Anti-Injunction Act implicated. Therefore, this court clearly has the authority to grant declaratory relief.

### 3. Should the Court Issue Declaratory Relief?

In St. Paul Ins. Co. v. Trejo, 39 F.3d 585 (5th Cir. 1994), the Fifth Circuit identified seven non-exclusive factors for a district court to consider when determining whether to decide or dismiss the declaratory judgment action, namely: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exists; (5) whether the federal court is a convenient forum for the parties and witness; (6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. Id. at 590–91. These factors were later divided by the Fifth Circuit into three categories: (1) factors relating to federalism and comity (first and seventh Trejo factors), (2) factors relating to fairness (second, third, and fourth Trejo factors), and (3) factors relating to efficiency (fifth and sixth Trejo factors). See Id. at 390–92.

### (a) Federalism and Comity

In connection with the first Trejo factor, the absence of a pending state litigation raising the same issues as the federal declaratory judgment strengthens the argument for deciding the declaratory judgment action. As stated above, Clarendon is not a party to the state court action and the issue as to whether Clarendon owes CM General a duty to defend or indemnify under the policy is not being litigated in state court. Further, the final Trejo factor is inapplicable as this court is not being asked to construe a state judicial decree of any kind.

Because Clarendon's Complaint does not appear to raise any serious federalism or comity concerns, these factors weigh in favor of adjudicating Clarendon's request for declaratory relief.

### (b) Fairness

With respect to the second and third Trejo factors, Clarendon clearly filed this declaratory judgment action in anticipation of a suit by CM General. Nevertheless, "[t]he mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court." Sherwin-Williams, 343 F.3d at 397. In fact, "[d]eclaratory judgment actions often involve the permissible selection of a federal forum over an available state forum, based on the anticipation that a state court suit will be filed." Id. at 398. Clarendon brought its suit with a legitimate purpose in mind—the clarification of its duty to defend and indemnify CM General with respect to the Fertittas' claims. This Court is not aware of any authority that supports the proposition that an insurer is barred from invoking jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage. Id. at 398 (citing Gov't Employees Ins. Co. v. Diol, 133 F.3d 1220, 1225 (9th Cir. 1998)).

The fourth Trejo factor concerns whether any inequities would arise as a result of a

declaratory judgment. In the present matter, a declaratory judgment in Clarendon's favor would be *res judicata* to Clarendon's liability to CM General to defend or indemnify under the policy. This poses an inequity to CM General and thus seems to weigh in favor of dismissing the declaratory judgment action. However, CM General was fully aware of Clarendon's suit and the risk of default judgment, and chose to ignore the suit. CM General has not presented to the Court any reasons that would require jurisdiction to be declined on grounds of "fairness."

### (c)     Efficiency

The fifth factor relates to whether the federal court is a convenient forum for the parties and witnesses. The Western District of Louisiana is a convenient forum for all defendants named in this action, as all of them are domiciliaries of Louisiana. Clarendon is a Delaware corporation with its principal place of business in New Jersey, but Clarendon invoked the jurisdiction and thus waived any objections to the forum. Moreover, because the declaratory judgment simply involves interpretation of the Clarendon policy, the merits of the declaratory action can be decided on the pleadings and evidence in the record alone without the need of a hearing and witness testimony.

The sixth factor requires the court to assess whether Clarendon's suit would further judicial economy. As a general rule, resolution of a dispute in a single federal forum furthers the interests of judicial economy. See Dow Agrosciences, L.L.C. v. Bates, 332 F.3d 323, 328 (5th Cir. 2003), rev'd on other grounds.

Accordingly, it is this Court's belief that all of the Trejo factors weigh in favor of resolving Clarendon's request for declaratory relief. A declaratory judgment will clarify and settle legal issues, and terminate and afford greater relief from the uncertainty, insecurity, and controversy giving rise to the underlying action. It will determine whether the damages suffered by the Fertittas are covered

by the Clarendon policy, and consequently determine whether Clarendon has a duty to defend and indemnify CM General for any damages that may arise out of the underlying action. Thus, having found that a declaratory judgment should be issued in this matter, the Court will address the substantive merits of Clarendon's motion [Record Document 29].

## C. CLARENDON'S DUTY TO DEFEND OR INDEMNIFY

In the underlying action, the Fertittas alleged that CM General breached its contract "by failing to complete the construction work on or before August 15, 2005, by subsequently totally abandoning the project without justification or legal cause, and by improperly performing the work." See Rec. Doc. 29, Ex. 1, at ¶ 21. At the commencement of the project, CM General agreed that Co-Op Projects would supply cabinetry and appliances, and that it would allow Co-Op Projects to take appropriate measurements, order, fabricate and install the items once CM General had reached a certain degree of completion. Id. at ¶ 24. The Fertittas contend that the failure of CM General "to timely perform its work was the cause-in-fact of the inability of Co-Op Projects to order and install the materials it had agreed to supply" before Hurricane Katrina.[5] As a result, Co-Op Projects was forced to order and install the materials at a substantial price increase that arose subsequent to the hurricane, causing the Fertittas to pay Co-Op Projects $26,884.00 above the contract price. Id. at ¶ 25. CM General also failed to satisfy the claims of various subcontractors and materialmen who supplied goods and services that were incorporated into the project. These subcontractors and materialmen "have filed statements of claim and privilege against the [Fertittas] and/or their property for monies owed to the lienors while functioning in their capacities as subcontractors and/or

---

[5]On August 29, 2005, Hurricane Katrina struck New Orleans. The severe winds, rain, and flooding caused substantial damage to the project.

Page 10

materialmen to CM General." The filing of such statements has "made it difficult or impossible for the [Fertittas] to mortgage and/or convey their property." Id. at ¶ 27. Further, the Fertittas had to hire another contractor, RSB Companies, L.L.C., to complete the project, "at a cost substantially in excess of the construction price agreed upon" between the Fertittas and CM General. Id. at ¶ 22.

Whether Clarendon has a duty to defend and indemnify depends on whether the Clarendon policy provides coverage for the damages allegedly sustained by the Fertittas. "Under Louisiana law, an insurer's duty to defend suits brought against an insured is broader than its duty to indemnify the insured." Lamar Adver. Co. v. Continental Cas. Co., 396 F3d. 654, 660 (5th Cir. 2005) (internal quotations and citations omitted). When determining whether an insurer has a duty to defend, a court must compare the allegations in the complaint against the insured with the terms of the policy at issue. "If there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded, the insurer must defend the insured." Id.

Clarendon contends that it has no duty to defend under the Clarendon policy because there are no facts in the petition which, if taken as true, support a claim for which coverage is not unambiguously excluded. Clarendon asserts three separate and independent reasons for why coverage is not available under the policy: (1) coverage is excluded under the "business risk" exclusions, (2) coverage is not triggered because there is no "occurrence," and (3) "coverage is not triggered because there is no "property damage." See Rec. Doc. 29.

1. **"Business Risk" Exclusions**

Commercial general liability ("CGL") policies provide coverage for the insured's legal obligations to pay that arise out of the insured's negligence. They do not cover "business risks" arising out of the insured's poor performance. In the Clarendon policy, Exclusion (m) specifically

provides:

> m. Damage to Impaired Property or Property Not Physically Injured
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> (2) A delay or failure by your or anyone acting on your behalf to perform a contract of agreement in accordance with its terms.

See Clarendon Policy, Rec. Doc. 29, Ex. 2. "Impaired property" is defined to mean "tangible property, other than 'your product' or 'your work,' that cannot be used or is less useful because" it incorporates the insured's product or work that is defective, deficient, inadequate or dangerous, or because the insured failed to fulfill the terms of a contract or agreement. See Id.

Clarendon argues that the claims in the underlying suit for damages due to CM General's failure to complete the project on time and improperly performing the work are not claims for "property damage" as that term is defined in the policy.[6] Assuming *arguendo* that the Fertittas do have a claim for "property damage," coverage would be excluded under provision (m) of the Clarendon policy. The underlying claim falls under the "property damage" to "impaired property" exclusion as the 1039 Warehouse Apartment Project property "cannot be used or is less useful as a result of" CM General's delay or failure to perform the contract in accordance with its terms. See e.g., PCS Nitrogen Fertilizer, L.P. v. U.S. Filter/Arrowhead, Inc., 834 So.2d 456 (La. App. 1st Cir. 2002) ("Under this exclusion, if an insured agrees to furnish equipment essential to the plaintiff's manufacturing process, there is no coverage for the plaintiff's loss of use arising out of the insured's

---

[6]"Property damage" is defined in the Clarendon policy as "[physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." "All such loss of use shall be deemed to occur at the time of the physical injury that caused it." See Clarendon Policy, Rec. Doc. 59, Ex. 2.

failure to perform the contract timely.").

Clarendon also argues that coverage is excluded under the following provisions:

j. Damage to Property
"Property damage" to...
(2) Premises that you sell, give away, or abandon if the "property damage" arises out of any part of those premises;...
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly preformed on it.

k. Damage to Your Product
"Property damage" to "your product" arising out of it or any part of it.

l. Damage to Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazards."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

See Clarendon Policy, Rec. Doc. 29, Ex. 2.

These exclusions, referred to collectively as the "work-product" exclusions, reflect the intent of the insurance industry to avoid the possibility that coverage under a CGL policy will be used to repair or replace the insured's defective products and faulty workmanship. See e.g., Supreme Services & Speciality Co. v. Sonny Greer, Inc., 958 So.2d 634 (La. 2007) ("A CGL policy is not written to guarantee the quality of the insured's work or product."). The allegations of the Fertittas state court petition provides that any "property damage" suffered by the Fertittas arose as a result of CM General's "improper performance," which is specifically excluded by Exclusion (j)(6). Thus, the Clarendon policy simply does not provide coverage to CM General for the damages sustained

Page 13

by the Fertittas.

## 2. "Property Damage" and "Occurrence"

Because the claims alleged by the Fertittas are clearly excluded under the provisions described above, it is unnecessary to determine whether the claims are for "property damage" arising out of an "occurrence," as these terms are defined by the Clarendon policy.

## III. CONCLUSION

For the foregoing reasons, this Court finds that a Default Judgment in favor of Clarendon against CM General and James L. Cartier is warranted. The Court also finds that the underlying claims of the Fertittas are unambiguously excluded and, therefore, Clarendon does not owe a duty to defend or indemnify CM General or James L. Cartier under Clarendon policy no. DSA01437 for the claims, losses and damages alleged in, and arising from the alleged facts that are the subject of, the lawsuit filed by Gayle and Joseph Fertitta in the Civil District Court for the Parish of Orleans, Louisiana, docket number 06-11498.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 16th day of January 2009.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE